The next case on the docket is number 120997. Agenda number two, People of the State of Illinois v. Suleyma Cole. Appellant and appellee, are you ready? I think that the appellant is. Move things right along. You may proceed. May it please the court, Clifford Berlow on behalf of Amy Campanelli, who is the public defender of Cook County, Illinois. As the court is aware, in this case, the circuit court held Ms. Campanelli in contempt of the court for declining the appointment to represent Suleyma Cole. That decision was wrong, and the court should reverse it. The decision was wrong because, as Ms. Campanelli explained to the court, the representation of Ms. Cole would have created a disabling conflict of interest that would have prevented her from going forward under two mutually reinforcing bodies of law. The Illinois Rules of Professional Conduct, on the one hand, and the Sixth Amendment to the United States Constitution, on the other. And it's important, I think at least at the outset, to understand how those two bodies of law interact. The Sixth Amendment exists to ensure the protection of the effective assistance of counsel. What the Rules of Professional Conduct seek to do is to have lawyers like Ms. Campanelli and private counsel alike do their utmost to ensure that their client's Sixth Amendment rights are protected. And that's exactly what Ms. Campanelli did. Immediately upon being appointed, she notified the court that she faced two different but somewhat related conflicts of interest. The first was an individual conflict under Rule 1.7. This representation would have had her essentially being on both sides of the case because she already represented Ms. Cole's co-defendants. It would have had her essentially taking positions that were adverse to herself because Ms. Campanelli is appointed as counsel in every case that her office represents, as this court held in Burnett. Second, she faced a conflict under Rule 1.10, the Imputation of Conflicts Rule, which would have had her and all of her colleagues share in that adversarial conflict under Rule 1.7. Now, the United States Supreme Court has been very clear about how this circumstance should be dealt with. Under Holloway v. Arkansas, as well as this court's subsequent decision in People v. Fryser, when this sort of conflict is brought to the court's attention early on, all that needs to be shown is that there is a potential risk that a conflict will arise at trial. Indeed, here, Ms. Campanelli went beyond that. What Ms. Campanelli told the court was that based upon attorney-client privileged information, she knew that there already was an actual conflict between her existing clients and Ms. Cole. As a result, the circuit court here said that Ms. Campanelli had to provide concrete evidence that an actual conflict already exists. That's not true. Under Holloway, under Fryser, it was sufficient for her to make a representation to the court that based upon confidential information, she knew an actual conflict existed. And indeed, under Holloway itself, as well as the subsequent U.S. Supreme Court decision in Kyler, all that she needed to do was say that there was a potential conflict, which unquestionably there was. As a result, the circuit court's contempt order is inconsistent with the law, and it simply cannot stand. Now, I want to begin with the individual conflict that Ms. Campanelli faced, because it seems to me that that's really the root of all of this. Maybe you're going to get there, Mr. Berulo. Just by point of clarification, if we reject the argument that the claim that the office cannot represent more than one defendant based on the 2010 rules, which I think you'll probably get into, right? Yes. At some point. So I'm going ahead and maybe far afield. Would there have to be a remand based on what happened below? If we disagree with that argument, does there need to be another hearing on the motion to withdraw? Well, let me try and answer your question in two ways, Justice Thomas, because I think I want to be sure that I'm understanding it correctly. Okay. If the court were to disagree that there is an imputed conflict under Rule 1.10, it seems to me that there still would be the issue of the Rule 1.7 conflict, which Ms. Campanelli unquestionably faced. Now, it seems to me, based upon how the circuit court proceeded here, and I'll be the first to say I don't think the circuit court was particularly clear on this point, but it seems to me that the circuit court agreed with Ms. Campanelli that she did face a Rule 1.7 conflict. She simply had not provided enough proof as to whether that conflict existed, which, as I said, I think is inconsistent with Spreitzer and with Holloway. Here's why I believe that. Subsequently, and this is in the supplemental record we provided, that's the transcript from the July 18th hearing, the circuit court agreed to allow Ms. Campanelli to withdraw from representing two of the six criminal defendants in this case. That decision only makes sense if the circuit court believed one of two things. Either that there was an imputed conflict as a firm, or, on the other hand, that Ms. Campanelli was appointed as counsel in every case, and that it was her failure to provide what the circuit court referred to as concrete evidence that an actual conflict already existed. That was the basis for the disqualification. So I think with regard to the 1.7 conflict. So your position is the proof is there. The trial judge just erred with respect to Colt. With respect to the standard, that's correct, Your Honor. All right. So not that there would have to be a new hearing. He was either right or wrong. The judge was either right or wrong with respect to that. I think that's our position. Certainly if the court felt that a remand was necessary for the circuit court to, for Ms. Campanelli to make a further representation or to provide further information, we would certainly accept that. It just doesn't seem to me that that's necessary here under Holloway and Spreitzer. Ms. Campanelli said all that she was able to do without betraying the confidences that existing clients had already conferred in her. She said, I know, at C-186 of the record as well as at appendix, I think, 47 in our brief, she says explicitly, I know there's a conflict here. I know it because I've had attorney-client privilege information. That's all that she could say. It would be a violation of the Sixth Amendment for the circuit court to compel her to betray that confidence. It would also be a violation of the rules of professional conduct. There are very limited circumstances in which the attorney-client privilege can be breached, and this certainly wasn't one of them, particularly in light of Holloway. Let me just ask you that you can at least incorporate this into your argument on 1.10. The 2010 rules of professional conduct were enacted 30 years after the decision in Robinson. Robinson held that the public defender's office is not a firm for purposes of that rule that I mentioned. Although the 2010 rules don't specifically exclude the public defender's office, what do we do with the black letter law that presumes that the court was aware, that they were aware of the court's decision in Robinson when they revised the rules? Well, Justice Thomas, let me start with the premise, I think, to the point you just made, which is that Robinson interprets the rules. That's not true. The rules didn't exist in 1979. There were no written rules, and there was no written definition of the term firm anywhere in either the old Illinois code or even under the ABA model rules. The court in Robinson wasn't interpreting plain language. We have plain language now, and this court has said time and time and time again that the way to approach any of this court's rules includes the law. So it's of no consequence then that Robinson said that the office is not a firm. It strikes me as, I think the answer to your question is yes, Justice Thomas, because there's been an intervening development, and that is that we now have text to apply. Again, if the court is going to reiterate to the bar over and over again that the important thing to do is to look at the plain language of the rule, it seems to me that the starting place for the court should not be Robinson, which doesn't purport to interpret any plain language at all, but the language of the rule, and then to determine whether or not Robinson remains good law in light of this court's rules, the rules that this court has promulgated. I point out that the state makes no effort in its brief whatsoever to square Robinson with the definition of what a firm is in Rule 1.0C, and that's because it can't be done. But the rule says is that a firm is any group of lawyers who are associated and authorized to practice law, and that is unquestionably true of the public defender's office. It also incidentally says that a firm is any public service organization. That is also a legal aid, legal support organization. That is also unquestionably true of the public defender's office. And I would commend to the court if there's still any sense of ambiguity there to look at the commentary, look at Comment 2, look at Comment 3. Comment 2 says the question of whether a legal organization is a firm is an objective test. The question is whether it appears to someone from the public on the outside looking in that the group of lawyers conduct themselves and hold themselves out in a way that suggests that they are a firm, and that makes a great deal of sense as a practical matter. There's a question about since we understand where Robinson came in before the rules were adopted, but the record apparently shows that in 1981, the Cook County Public Defender's Office created the Multiple Defender Unit. And perhaps, I have not checked the entire record, but I would assume there's some discussion in this record as to the structure of the Multiple Defender Unit, usually called the MUD Unit, where when there are multiple defendants, a lawyer is appointed that is not the lawyer generally of the public defender's office, but in a separate unit, a separate unit that does not share offices with the other public defenders. It has a different structure, has different supervisors, et cetera. In other words, since 1981, there's been a line drawn between single defendant representation and multiple defendant representation. Doesn't that meet the standards here of this rule? Absolutely not, Justice Tyson. Let me explain why. The Multiple Defender Unit, go back to the Public Defender Act, I think, as a starting point. The way the General Assembly has structured the Cook County Public Defender's Office, and indeed every public defender's office in the state, is that there is an appointment of a single public defender who is ultimately held responsible for every case that the office handles, including the cases assigned to the Multiple Defender Office. So, Ms. Campanelli has the 1.7 issue with respect to even those cases being held by the Multiple Defender Unit. She is ultimately the one who is going to be held responsible. She's in charge. That's the way the General Assembly has chosen to structure that office. If the General Assembly had wanted to create a Multiple Defender Unit that was not run by the same public defender, that might cure, at least at some level, some of the problem. The General Assembly didn't do that. The General Assembly thought there was value in having a single person who is ultimately responsible for every representation undertaken by that office. The second answer I would put to your question is this. There is still an affiliation between the Public Defender's Office and the other Assistant Public Defenders and the Multiple Defender Unit. They may have separate spaces, but it is not as though the members of that Multiple Defender Unit do not have any relationship with the other Assistant Public Defenders. It may have mitigated some of the harms described in Holloway, but it hasn't solved the problem. I guess I would come back to this final observation, which is this. Just because we have the Multiple Defender Unit, which has, perhaps I agree, mitigated some of the harm by having a separate pool of lawyers handle the second defendant. Obviously, when you've got a third, a fourth, a fifth, a sixth, there are not seven different Multiple Defendant Units, and so that really doesn't cure anything with respect to those defendants. But I don't think we can say that this system has worked swimmingly, and here's why. I would encourage the Court to go back and look at Holloway again. What Holloway describes as the evil of multiple representation, and that's the very strong language that the Supreme Court used. What they describe as the evil is that it can be, it is as much what a lawyer doesn't do as what a lawyer does do that creates the harm to the criminal defendant. Are you aware of any case in the last 36 years where a defendant who was represented by the MUD Unit alleged later ineffective assistance of counsel based on a conflict with the rest of the public defender's office? Off the top of my head, I'm not aware of one where they've alleged it. I also recognize that the vast majority of these cases, because of Robinson, where there was no objection raised at the outset of the representation, were decided under the Kyler against Sullivan standard, which is more akin to the Strickland standard. It requires a showing of actual prejudice that adversely affected the performance of trial counsel. Those cases, I think, as the Court is aware, the Court addressed the Kyler case in the Nelson decision from earlier this year. Those cases are very few and far between, as they should be. What Holloway seeks to do is to create an inducement for lawyers to bring this issue to the Court's attention at an early stage. And the reason, and the way it does that is it says that the standard is essentially reduced, the burden is reduced, if the issue is brought to the Court's attention earlier. I think the individual defendants you're talking about who have been represented by the multiple defendant unit, for the most case, have been Kyler cases because essentially would have been viewed under, I think, the pre-2010 rules and under Robinson as being at least, if not frivolous, at least exceedingly difficult to raise that objection early on. And at the end of the day, we simply can't know how many of those cases, for all of those years, where a defense lawyer in the multiple defendant unit took 10% off the ball, 20% off the ball, because there's an affiliation with their colleagues. They are going to be afraid of undermining their colleagues just like any other group of lawyers in a private firm. They are not going to want to be ostracized by their colleagues. There's going to be a sense of loyalty. These are all lawyers who are part of the same collective bargaining group. They feel that there is a sense of affiliation within them. And so, while I certainly would commend the idea that they tried to deal with this problem through the multiple defendant unit, it's a little bit of putting a Band-Aid on a significantly larger wound. How many cases do you think are involved a year? If these cases were no longer handled by the Public Defender's Office in Cook County, how many cases are we talking about? Justice Titus, this isn't in the record, but I can tell you based on conversations with my client that if you look at 2015 and you look at 2016, you see between 20 and 25,000 cases of felony cases and murder cases that the Public Defender's Office handles each year and about 100,000 to 120,000 misdemeanors. We're talking about, given that caseload, between 600 and 800 multiple defendant cases at any given time. So we're talking about a relatively small percentage. Now, I certainly would not stand here and tell you that finding lawyers for 600 to 800 people is an insubstantial effort. But I think there are two points I would make to the Court. First, I would commend to the Court the amicus brief from the National Association of Public Defenders. And that points out that states from across the country have found a number of different ways to manage the issue of conflicts in multiple representation cases, many of which do not require the appointment of private counsel. Legislatures from across the country have created decentralized Public Defender's Offices where all the assistants are essentially independent contractors. Some states have allowed the authorization of public defenders from neighboring counties to come in. That doesn't cost the state even another nickel because those cases are still handled by the state. There are cases... By the way, are public defenders paid by the state? Well, there's a... How about Illinois? Well, in Illinois, they're paid by the county. If the state wanted to take on that obligation and essentially rejigger it, they would be able to do it. There are systems of panel appointments. There are requirements that the trial bar in some states that they accept a pro bono representation for a firm do so on some sort of regular basis. There are a number of different solutions. And at the end of the day, it seems to me that if it comes down to a question, which seems to be the government's principal argument here, that it's just too hard, it's just too burdensome to protect the Sixth Amendment rights of the most vulnerable members of society, this Court has said time and time again, and quite rightly so, that simply citing the public fisc is not going to be a sufficient basis to ignore a constitutional right like the Sixth Amendment. Counsel, before your time expires, is it possible for this Court to decide this case on the narrow issue of this case itself and whether there was a sufficient showing of conflict that outside counsel should have been appointed? Or is it necessary that the Court address the larger issue of whether it is an inherent or a per se conflict for a court to appoint a public defender in any multiple defendant representation cases? Justice Garland, I think the simple answer to that question is no, it can't, unless it is prepared to say that the United States Supreme Court's decision in Holloway is overturned. And I don't believe it can do that. And if it wants to reverse itself in Spricer. The showing that was made here was certainly adequate under those two decisions. And so it seems to me that that's not really a realistic off ramp here. So we couldn't say, well, they should have allowed the motion or allowed the public defender to withdraw and not address the other issue? Well, I think the Court could say that she made the showing under Holloway that was required. Sorry, I may have misunderstood your question. The Court could certainly hold that Ms. Holloway made all of the showing required of her under Holloway and that the circuit court had no right to essentially say, unless you breach the privilege, I won't allow you out of the case, and then to take the broader question and leave that for another day. But it does seem to me, and if you look at this Court's decision in Spricer, that the idea of a potential conflict being sufficient, the Court said that's not a per se conflict that is disqualifying, but it is essentially quite similar to that, at least because the idea that you're going to have the basis of making this representation be a confidential conversation with a client is almost always going to be true. Mr. Berlow, your time has expired. However, Justice Collins has a follow-up question. And the follow-up is quite simple, then. The showing, then, under Holloway is no showing, right? That's your position. If there's an allegation that whatever I would have to tell you, Judge, is a confidential communication that I have from my client, so I can't divulge that. It's just, trust me, there's a conflict. That's enough? Justice Thomas, I want to try and answer this as precisely as I can because I think this is critical to the case. The answer is that under Holloway, the rule is that if an attorney comes forward, as an officer of the court, in Ms. Campanelli's case, a public official, and says, I have had a privileged conversation that I am not permitted to disclose, either ethically or constitutionally, that is going to be sufficient. And the reason for that rule, and the Supreme Court confronted this in Holloway, if you look at the transcript of oral argument there, they discuss it at length. The reason for that is the alternative is intolerable, saying the only way you can protect your Sixth Amendment right is to betray the confidence of your client, potentially undermine the attorney-client relationship, breach that trust, and then potentially have the court say, no, you still must go forward with a lawyer who says he or she cannot represent you within their ethical duties and with a conflict. And I'll point out, and I'll disclose with this, I would urge the court to look at Rule 1.16, Comment 2, and it says, black and white, that ordinarily the representation that, for professional reasons, I cannot provide any further explanation as to the nature of my conflict absolutely should be enough for a trial court. The trial court, I think, as my response to Justice Garmon's question points out, ignored that rule and simply demanded too much. So your answer, then, in light of those two questions, to Justice Garmon's question is that this court can either find under 1.10 that firm encompasses the office or that, in this particular case, your officer or the court argument that as long as there's a conflict alleged that would include a divulging of confidential information, the trial judge has to accept that and accept the fact that there's a conflict. So we could rule either way in this case. You could, and I think that the one nuance I'd add to the alternative argument would be to say that there is a conflict under Rule 1.7 because the public defender is the one appointed to and is counsel in all of those cases. Thank you. Thank you. Thank you. Happily. Mr. Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court, I am Assistant State's Attorney Alan Spellberg representing the people in this case. To begin with, I'd like to address Justice Thomas's questions regarding what kind of showing has to be made under Holloway v. Arkansas. And as you indicated, Your Honor, it's not simply an assertion of trust me. In fact, it requires much more because the facts of Holloway demonstrate that it must be much more. In Holloway, what counsel didn't indicate at all was that there was a single assistant public defender who was charged with representing three defendants in a murder trial. And as he was progressing for trial, after discovery had been complete and statements had been made, the attorney went to the court and said he cannot represent them because of the conflict in representing the three defendants who were accusing each other. He could not represent them in a single trial. And the trial judge said, no, you'd have to figure it out. It worked its way up to the United States Supreme Court. The United States Supreme Court said when the attorney makes that assertion that he cannot represent them, then a conflict exists and the attorney should be excused and allowed to withdraw. However, what the court further said is that such assertions cannot be based upon remote or speculative conflicts. And that is precisely what the trial judge did here. The trial judge allowed Ms. Campanelli, the sworn public defender of Cook County, to present her argument that she could not represent Defendant Salimah Cole. She asked her for a demonstration of some facts, something that she could point to, to show that there was a conflict. And the only facts that were offered were that she was already representing the other defendants who had been charged in the case, and that she couldn't share anything else because it could potentially raise privilege issues. The judge wanted something more than simply an assertion of the failure of the inability to represent multiple defendant cases. And all that was offered in response to that was the assertion that I'm a law firm of one under Rule 1.7 and that all conflicts are imputed to everyone in my office under 1.10. But what Judge Pittman found in this case and what she was bound by was the unbroken chain of law from this court that public defender's offices are not treated in the same way as law firms under the Rules Professional Cabinet. Now, I know counsel stated that Robinson, which came out in 1979, predates the rules, and so therefore it should have no bearing. But what counsel doesn't share with this court is that Robinson specifically addressed the canon that predated the rules, the longstanding canon, which said that lawyers in a single firm cannot represent multiple defendants. So Robinson addressed the same rule that has existed throughout the legal professional history, saying that public defender's offices are not law firms for purposes of the rule regarding multiple defendants. And instead, what should happen is that ethical screens should be created. And so in light of Robinson, the Cook County Public Defender's Office created the Multiple Defendant Division. And based upon that, there was an ethical screen created so that there would not be the multiple representation in a single case. Mr. Spelberg, we started by talking about potential remands in this case, right, with Mr. Berlo. And I have to ask you the same thing. This comes before us on a finding of contempt, right? Yes, Your Honor. And that Ms. Campanelli can purge herself of direct civil contempt. And what would an affirmance in this court do, right? The contempt finding is stayed by the appellate court, right? But if we affirm this, do we have to remand and give Ms. Campanelli a chance to give more information? Or where are we at with respect to that? Your Honor, thank you. That was actually my very next point, that this case is actually not about the Sixth Amendment conflict issue. This is about a refusal by the Cook County Public Defender to abide by a clear and lawful order by a court. And she was held in contempt for doing that in a direct civil contempt, wherein she would have the ability to purge herself simply by agreeing to accept the appointment, or if it's reversed by a superior court. In this case, if this court were to affirm, that order would still exist. Ms. Campanelli could either purge herself by accepting the appointment, could try and take the matter to a further court, the United States Supreme Court, I suppose, or could just suffer the consequences of having this direct civil contempt. And let me clarify. Is one of the options a further hearing with whether there's a direct conflict in the Cole situation? Your Honor, I don't believe there is. And the reason why is because based upon Ms. Campanelli's refusal to accept the appointment, private counsel was appointed. Ms. Cole is currently represented by private counsel. The case is progressing through that private counsel appointment. And so Ms. Campanelli has the choice of either accepting the appointment as it exists right now or continuing to refuse to do so. I don't believe that a further hearing where she can make further demonstrations is appropriate. Well, what's the difference with respect to you're saying she can accept the appointment and purge herself, right? Yes. And you said private counsel was appointed. What's the difference between that circumstance and her going back and saying, I want a chance to give more to the trial judge to indicate that there's a conflict and purge yourself that way? Your Honor, thank you. I wasn't clear. This case is about Ms. Campanelli's contempt finding. It is not truly about Ms. Cole's representation. Ms. Cole's representation can be addressed through the normal appellate process, which is what Judge Pittman specifically said to Ms. Campanelli at the time, that her refusal to abide by the lawful court order, refusal to accept the appointment in light of the unbroken chain of law, in light of the determination, in light of the repeated rejection by both this court and other courts of the Cook County Public Defender's claim, that was contemptuous in its own right. The ability of Ms. Cole to receive conflict-free counsel and the determination as to whether or not she is receiving conflict-free counsel could be addressed through the appellate process if Ms. Cole is convicted. Or if any of the other multiple defendant cases are convicted and the claims are raised. But even in the situation like this, where the claim is raised before trial, as counsel stated, the standard is different on appeal. If it's first raised post-trial to potential conflict, you look for an actual conflict and prejudice. If it's raised beforehand, you use the lesser standard of repellent. But what we have here is a complete and total lack of facts. And we know that the judge properly applied the standard because, as Ms. Campanelli was held in contempt, a hearing was held and the motion to withdraw from the other four cases. And Judge Pittman carefully listened to all the evidence, all the assertions made by the Cook County Public Defender's Office, and allowed the Public Defender's Office to withdraw from two of the four defendants because there was a conflict based upon the publicly available information in that two of the defendants were charged with intimidation against the third co-defendant. So just quickly then, again, go over what an affirmance does, what her options are with respect to the contempt finding if we affirm. The affirmance, Your Honor, either allows Ms. Campanelli to purge it by accepting the appointment or just continuing to refuse. From Ms. Cole's perspective, it would either lead to the continuing representation by the private attorney or would lead to the subsequent appointment of the acceptance of the representation by the Public Defender's Office. You taking notes, Mr. Berlow? All right. Remember that question. One of the things which is truly important, counsel started off by saying this case involves two conflicts, one under 1.7, one under 1.0. 1.7 being Ms. Campanelli's personal conflict as she is the lawful representative of all the persons who the Cook County Public Defender's Office has appointed to represent. That is true. That's what this court said in Burnett. That's what this court said for 60 years. However, what counsel didn't say is that under Rule 1.1, government officials, government lawyers like Ms. Campanelli, Rule 1.7 doesn't apply in the same way. In fact, 1.11d specifically says, except as otherwise expressly permitted by law, Robinson and its progeny expressly permitted by law, that she as the head of the office has no choice but to represent all indigent defendants charged in Cook County. That is her job. That is her sworn obligation. And so for that reason, 1.7 doesn't apply to Ms. Campanelli the way it would apply to the head of a criminal defense law firm because it can't because her role is different. And that's consistent with every state Supreme Court that has addressed this issue, even the cases that are cited in my opponent's reply brief. In particular, I would direct this court's attention to the State versus Garcia decision from the Louisiana Supreme Court. What that court held in a case involving the state public defender and the independent defense courts, which are akin to district offices, it specifically held that the claim that the state public defender was charged with representing all of the defendants in the case was to claim that he was conflicted out under Rule 1.7 was expressly meritless. There was no basis to that because his role was to serve as the chief public defender. So the 1.7 argument doesn't make sense in light of Rule 1.11. And then the imputation argument to the rest of the firm doesn't make sense either, again, because of Rule 1.11. And so what we have here is Judge Pittman being faced with a public defender refusing to accept an appointment where the case law says she can serve without suffering a conflict, and the statute says it is her role to do so, and the judge expressly giving an order to accept it, and then a patent refusal to abide by that, and then a request to be held in contempt so that she could bring about an appellate review. As Judge Pittman said, this is not the proper mechanism to do so.  There are other mechanisms to review these legal claims, but Ms. Campanelli didn't choose to do so. And so I just want to clarify, we are in no way questioning Ms. Campanelli's sincerity in her belief that multiple defendant representation puts her in a difficult position, creates a conflict. But the law says otherwise. The case law says otherwise, and the trial judges of the state, particularly in Cook County, are faced with having to enforce the law, as this court has announced, as the rules apply, and has never been a change in any way. And so for that reason, we'd ask this court to affirm. If, however, this court were to reach the conclusion that while Ms. Campanelli was wrong, a finding of direct civil contempt was inappropriate, we obviously would have no objections to that. What we would like, just as Ms. Campanelli would like, is clarity of this issue. This issue has gone around many, many times as this court knows. It's been presented to this court repeatedly. We also seek a resolution of the issue. Mr. Spelberg, before you step down, if I heard Mr. Berlow correctly, I think he urged us to take a close look at Rule 1.16, Comment 2. Did you hear that part of the argument? Yes, I did. Okay. What's your take on it? Well, Your Honor, we studied 1.16 in our brief. The response was in the reply to 1.16. What 1.16 says is that an attorney can ethically represent a defendant even after a judge has refused his motion to withdraw. And so we studied Rule 1.16 to demonstrate that Ms. Campanelli's assertion that she could not in any way ethically represent Ms. Cole without risking review by the ARDC was not correct.  Which is what this case is about. This case is about Ms. Campanelli and her risks, not truly about Ms. Cole's constitutional rights. Yes, and it is true that in most instances under 1.16C, Comment 2, it is true that in most instances judges should accept the assertion of the lawyer making that claim.  And when there are available ethical screens which have long been recognized and can provide and guarantee the rights of the defendants and protect those rights, then I don't believe that a judge is obligated to accept simply, trust me, Your Honor, there's a conflict and I can't tell you why. That would really upend the system as it exists. Actually, I do just want to bring one back point. Mr. Berlow said that the multiple defendant division was a band-aid on something that doesn't help. But that's not true because that's exactly what every state does in this situation. Here in Cook County, what is expected is that the multiple defendant division is going to represent the second defendant. And if there's more defendants, then they will find lawyers from other parts of the office, from other parts of the county. So somebody maybe from the Markham Courthouse might come in to represent. Or elsewhere. They are expected to be able to find ethical screens until they can no longer do so. And that's what other states do. Other states say, okay, fine, this district office is a firm, so you're going to grab from that district office instead. Because they know that there is a statutory obligation to represent the indigent defendants. And it doesn't automatically turn over to appointing private counsel and extra money through the budget. And the budget is not the only consideration. I want to make that clear as well. But it is a consideration. And it cannot be forgotten. And so for those reasons, we would ask this court to affirm. Thank you very much. Thank you, Mr. Spellberg. Goodbye. May it please the court, let me begin with this question about what has to be shown and come back to that. Because I understand why that's at the forefront of the court's mind. What Holloway says is that what a trial court can't do is require the disclosure of attorney-client privilege information for the reason I said. It's intolerable to require someone to, in essence, breach that trust with their client in order to protect their Sixth Amendment rights. The Supreme Court has said that in and of itself violates the Sixth Amendment. Now, Mr. Spellberg discussed the facts of Holloway. Let me quote exactly what the representation that was made in Holloway was. On August 13th, the criminal defense lawyer moved the court to appoint separate counsel for each petitioner because, and this is quoting from the record, the defendants had stated to him that there is a possibility of a conflict of interest. And Mr. Spellberg is suggesting that the court will return Holloway and apply an actual conflict standard. That simply cannot stand. And it's also inconsistent with what this court has had to say in Spreitzer. Just so we're clear, Mr. Spellberg argued that Holloway had language about there cannot be a, what did he say, speculative or remote possibility of conflict. Does that language appear in Holloway? Holloway says if a conflict, it's more, I think it's clearer in Kyler where really Holloway is summarizing what the rule of it is. But it says that, yes, if a conflict is too remote, then the representation can go forward over the defense lawyer's objection. But remoteness, you can't be required to make this showing by essentially reaching attorney-client prevalent information. How does the judge figure that out? Well, I think the Supreme Court, I think this court explained how that works in Spreitzer, which says that the top hand on the bat, the trump card, is if the attorney comes forward and says, look, I in good faith as an officer of the court am telling you that I've talked to my client. I know there's a conflict. I can't tell you what the nature of it is because it's going to tip off the prosecution and tell the judge who's going to preside over the trial something that I might not want to reveal about the guilt or innocence of my client, that that is where, that's the water's edge. You can't go beyond that point. And so while I understand the court's concern here, at the end of the day, it seems to be a far greater sin to say that in order to protect your constitutional right, you have to essentially undermine your ability to aid in your own defense in order to protect that constitutional right. At the end of the day. How do we match that? Too remote versus possibility of conflict. I mean, is there much, can you be much more remote than there's a possibility of a conflict? I mean, that's the portion that you cite and Mr. Spelberg cites the portion that says can't be too remote. I mean, what can be more remote than saying to somebody, hey, there's a possibility of something going on here? Justice Thomas, I'll come back to your rules. Comment 23 to Rule 1.7 says that ordinarily the risk of a conflict of interest arising in multiple representation is so great that a lawyer should decline the appointment. What Mr. Spelberg is proposing is a two-class system. For an individual able to afford private counsel, the representation, multiple representation, simply should not go forward in the ordinary course absent the very rare circumstances in which a multiple representation is allowed to go forward under Rule 1.7B. And we can talk about that, but they are going to be rare. I don't deny that. But when it comes to someone who is being appointed counsel, someone who is indigent and can't afford their counsel, Mr. Spelberg is saying that they have to live with the risk that their counsel not only might have a conflict and might have a serious risk of a conflict, but that they already believe that the conflict is likely to arise at trial. It seems to me that that has to be fundamentally at odds with the Supreme Court's bedrock of this entire field for decades, that the right to counsel for the poor and the wealthy is exactly the same. And all Mr. Spelberg is arguing here is that those two things shouldn't be one and the same. Now, I want to come back to what Mr. Spelberg said in regards to Robinson and how it relates to the rules. Robinson does mention the former ADA standards. Those ADA standards do not include a definition of the term. Those standards do not say anything about how you decide when something is affirmed or is not. And I'll point this out, and I think this is critically important. What this court said in Robinson was that they were rejecting the ADA standards. They were not going to follow them. They said that we recognize that the ADA standards say that an office like the Public Defender's Office should be affirmed. And then they said they wouldn't follow them. And so it strikes me as notable here. It's ever since 1990 when the Code of Professional Conduct was created, which is very much tied to the model rules. This court, in its rules, has steadily moved towards the ADA standard. And there is only one national standard in this area. Mr. Spelberg cites the split of authority and says that our cases don't support the idea that a Public Defender's Office with centralized leadership like we have in Illinois is affirmed. That's not true. By my count, there are 10 cases. There are about 10 states on one side that we cite and about 10 states on their side. But at the end of the day, remember, we're talking about a federal constitutional right, the right to counsel. It simply cannot be the case that whether that right is infringed or not depends upon the vagaries of 50 states' rules of professional conduct.  And the only standard that exists at a national level is the one provided by the ADA. And it says they are affirmed and that conflicts are imputed. There is a third restatement of the law in the Law of Governing Lawyers. It says explicitly in Section 123, Comment D, Part 4, Public Defenders' Offices are affirmed, conflicts are imputed, and I think there's a good reason for that. The amicus brief from Professor Gross, from Professor Loubet, from Professor Burns, makes the point that the most critical part of a representation when it comes to appointed counsel is trust. It's exceedingly difficult to establish that trust. And if the first thing that that lawyer is asked to do is betray that trust, that representation is going to be exceedingly difficult to go forward, and that criminal defendant is not going to be able to assist in their own relationship to their lawyer. That simply cannot be the rule. And finally, I just want to come back to how the rules interact here with how the public defender acts. This court has created its rules against the backdrop of a single public defender, and I am frankly perplexed at the idea that Rule 1.11 provides an exception here. It says Rule 1.7 explicitly in Part D. Rule 1.7 applies to government lawyers. It applies to government lawyers like the public defender, unless there is explicit statement somewhere else that says those rules don't apply. The state has not identified any authority explicitly saying that when it comes to public defenders, conflicts of interest don't matter. And that's the burden that they have to sustain to get out from under the rules. The state has gone out of its way in this case to avoid talking about the text of the rules. That should be strongly indicative of the weakness of their position before this court. Do you agree with Mr. Spelberg with respect to if this court affirms what lies ahead? Well, if the court were to affirm, I think that first we would have to decide. The short answer is that the court would have to decide. You were supposed to remember that. The answer is I don't agree. I think that if the courts were to affirm, Ms. Campanelli, if they were to go the route that Justice Garland suggested, that you suggested, could be asked to provide more of a showing and potentially betray attorney-client information. I think ethically that would create a dilemma for her. So I think at the end of the day, yes, I think Ms. Cole's representation will go forward. Whether the court would want to then appoint Ms. Campanelli in lieu of the fact that she can't ethically do it would be up to the court. Remember, what we've done here is put Ms. Campanelli in an impossible dilemma. She either has to say to the court, here's something confidential I'm not supposed to tell you, or she has to go forward and make this representation. That's not the law. It's not the law in the federal constitution. It's not the law under this court's rules. Mr. Spelberg conveniently glossed over Rule 1.16, Comment 2, which Justice Gilbride, you pointed to, which says that Holloway and this court's rules apply the exact same standard they are on all fours with one another. So I urge the court to reverse the decision of the law. Thank you. Thank you. Case number 120997, People v. Cole and Campanello will be taken under advisement as agenda number two. Mr. Berlow and Mr. Spelberg, we thank you for your arguments.